## COURT OF APPEALS.
### March 15, 1910.

## THE PEOPLE ex rel. JOSEPH SCHARFF v. JESSE D. FROST, as Warden, etc.

(198 N. Y. 110.)

(1). SEDUCTION UNDER PROMISE OF MARRIAGE—PENAL CODE, SEC. 284—
PENAL LAW, SEC. 2175—SUBSEQUENT MARRIAGE A BAR.

By section 284 of the Penal Code (Penal Law, § 2175), a person
who, under promise of marriage, seduces and has sexual intercourse
with an unmarried female of previous chaste charater, is punishable
by fine or imprisonment or both. By section 285 of the Penal Code
(Penal Law, § 2176) the subsequent intermarriage of the parties is a
bar to a prosecution for the offense, and under this statute the fact of
the subsequent marriage is not required to be pleaded. Such a prose-
cution is not ended until judgment is actually rendered, and when
the court is satisfied of the marriage of the parties before judgment,
such marriage constitutes a bar and brings the case within the express
terms of the statute, and it is the duty of the court to discharge the
defendant from custody.

(2). SAME—REMEDY OF DEFENDANT IS TO MOVE COURT IN ARREST OF
JUDGMENT.

Where a defendant was sentenced by a court which was apprised of
his marriage after the commission of such an offense, his remedy was
to move in arrest of judgment and upon denial of that motion to re-
view the action of the trial court on appeal. There is not, however,
such a lack of jurisdiction to pronounce judgment as entitles him to
relief by habeas corpus.

People ex rel. Scharff v. Frost, 135 App. Div. 473, 24 N. Y. Crim.
ante, affirmed.

APPEAL from an order of the Appellate Division of the Su-
preme Court in the first judicial department, entered Decem-
ber 30, 1909, which affirmed an order of Special Term dismis-
sing a writ of habeas corpus.

The facts, so far as material, are stated in the opinion.

*Charles Goldzier* and *Samuel S. Koenig,* for appellant.  The intermarriage of the relator with the prosecutrix, after plea of guilty and before sentence, barred the further prosecution for the crime of seduction.  (Penal Code, §§ 284, 285; *People v. Hall,* 23 Misc. Rep. 479; *People v. Fabian,* 192 N. Y. 443; *Cheney v. Arnold,* 15 N. Y. 345; *People v. Gould,* 70 Mich. 240; *Commonwealth v. Eicher,* 4 Penn. L. J. 326; *State v. Otis,* 135 Ind. 267; *Wright v. State,* 31 Tex. Cr. Rep. 242; *People v. Wright,* 65 Am. St. Rep. 242; 5 Am. & Eng. Ency. of Law [2d ed.], 248; *People v. Nelson,* 153 N. Y. 90; *U. S. v. Wilson,* 7 Pet. 150; *Comm. v. Lockwood,* 109 Mass. 323; *People ex rel. Cook v. Bd. of Police,* 16 Abb. Pr. 473).  The suspension of sentence, its revocation and the sentence imposed, were beyond the jurisdiction of the court, and hence properly reviewable upon habeas corpus.  (*People ex rel. Frey v. Warden, etc.,* 100 N. Y. 20; *People ex rel. v. House of Mercy,* 128 N. Y. 180; *People ex rel. Corkran v. Hyatt,* 172 N. Y. 176; *People ex rel. Tweed v. Liscomb,* 60 N. Y. 560; *People ex rel. Kemmler v. Durston,* 119 N. Y. 570; *Curtis v. Leavitt,* 15 N. Y. 153; *Westchester Co. v. Dressner,* 23 App. Div. 217).

*Charles S. Whitman, District Attorney* (*Robert S. Johnstone,* of counsel), for respondent.  The Court of General Sessions had full power and authority to sentence the relator.  The marriage of the relator, contracted after his conviction, did not divest it of such power.  (Penal Code, §§ 284-286; *People v. Allen,* 43 N. Y. 28; *Comm. v. Blake,* 94 Mass. 198; *Marshall v. State,* 6 Neb. 120; *People v. Fabian,* 192 N. Y. 443; *Comm. v. Lockwood,* 109 Mass. 323; *Comm. v. Richards,* 17 Pick. 295; *Shepherd v. People,* 25 N. Y. 406; *Quintard v. Knoedler,* 53 Conn. 485; *York County v. Dalhousen,* 45 Penn. St. 372; *Ex parte Brown,* 68 Cal. 176; *People v. Goldstein,* 32 Cal. 432).

WILLARD BARTLETT, J.:

On the 24th day of April, 1908, at a term of the Court of General Sessions held by the Hon. JAMES T. MALONE, one of the judges thereof, the relator pleaded guilty to an indictment charging him with the crime of seduction under promise of marriage. The relator was thereupon remanded for sentence and subsequently, some time between that date and the 6th day of May following, he married the woman upon whose complaint the indictment had been found. This marriage took place with the approval and consent of the court. On May 6th, 1908, the court, being held by the same judge who had presided when the plea of guilty was received and who was advised of such marriage, suspended judgment and released the relator from custody. The relator and his wife thereafter lived together, but for how long a period does not appear. On Feb. 17, 1909, the suspension of sentence was revoked and the Court of General Sessions held by the same judge sentenced the relator to imprisonment in the State prison for a term of not less than four years and not more than four years and six months. He was committed to the custody of the agent and warden of the Sing Sing State Prison upon the judgment thus pronounced against him and while in such custody sued out the writ of habeas corpus in the present proceeding. Upon the return to the writ and a traverse thereof showing the facts substantially as they have been stated, the Supreme Court at Special Term denied the application for the discharge of the relator on the ground that he had mistaken his remedy which was by appeal to the Appellate Division and not by habeas corpus. All the judges of the Appellate Division agreed that the writ of habeas corpus was the proper remedy, but they disagreed as to the merits of the case—a majority refusing to hold that the marriage of the relator to the complainant before the actual rendition of judgment upon the indictment for seduction operated

as a bar and prevented the trial court from proceeding any further in the prosecution.

Section 284 of the Penal Code as in force at the time of the indictment (now § 2175 of the Penal Law) provided as follows: " A person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment for not more than five years, or by a fine of not more than one thousand dollars, or by both." This enactment was qualified by section 285 of the Penal Code (Penal Law, § 2176) in the following words: " The subsequent intermarriage of the parties, or the lapse of two years after the commission of the offense before the finding of an indictment, is a bar to a prosecution for a violation of the last section."

These provisions of the Penal Code were derived from chapter 111 of the Laws of 1848, which provided as follows: " Any man, who, shall under promise of marriage, seduce and have illicit connection with any unmarried female of previous chaste character, shall be guilty of a misdemeanor, and upon conviction shall be punished by imprisonment in a State prison not exceeding five years, or by imprisonment in a county jail not exceeding one year; provided that no conviction shall be had under the provisions of this act, on the testimony of the female seduced, unsupported by other evidence, nor unless indictment shall be found within two years after the commission of the offense; and provided further, that the subsequent marriage of the parties may be plead in bar of a conviction." The language of the act of 1848 plainly implied that it was necessary that the defendant's marriage with the seduced female must have taken place at such a time as would permit the fact to be pleaded. It manifestly contemplated the interposition of a plea setting up such marriage before the marriage could be regarded as a bar to further proceedings under the indictment.

The change in the phraseology of the enactment effected by the Penal Code indicates a change of purpose on the part of the legislature. It was no longer required that the fact of the subsequent marriage to the complainant should be pleaded. It was sufficient if it was proved in any manner to the satisfaction of the court. If this view is correct the only remaining question on the merits is whether the prosecution under an indictment is concluded by a verdict or a plea of guilty, or must be carried on to judgment before it can be regarded as terminated. If the prosecution of the relator was not ended until judgment was actually rendered upon his plea of guilty, then his marriage operated as a bar to the rendition of judgment. Such seems to us the necessary meaning and effect of the statute. If the court before which he was arraigned for sentence was satisfied of his marriage to the complainant, it became its duty to discharge him from custody and proceed no further in the prosecution.

It is argued that this construction of the statute permits the defendant, under an indictment for seduction under promise of marriage, to put a stop to the prosecution in the course of the trial by marrying the complainant whom he may, nevertheless, at once abandon and leave without his society or support. That this may happen, and sometimes does happen in such cases, cannot be doubted; but we must interpret the statute as it is written, and in view of the obvious purpose and intent of the legislature in enacting it. The idea which is the basis of all legislation of this sort—which is very common throughout the Union—is that the marriage of a seducer to a previously chaste woman whom he has induced to consent to have sexual intercourse with him under a promise to marry her, even when such marriage is entered into under the compulsion of the law, comes nearer to constituting reparation for the wrong which the man has done the woman than any other redress which can

be devised. In *Cheney v. Arnold* (15 N. Y. 345), Chief Judge
DENIO, referring to the act of 1848, speaks of the offense as
being absolved by the subsequent marriage of the parties, say-
ing that the legislature intended by this enactment to protect
female purity.    It is true that the marriage is only a partial
atonement for the wrong inflicted; it does not wholly alleviate
the mental anguish and social disgrace (*Eichar v. Kistler*, 14
Pa. St. 282).    The lawmakers in their wisdom, however, have
deemed it better for the woman to relieve the man from punish-
ment if he marries her, and this even in view of the possibility
that the marriage may be followed by immediate desertion.    It
is not for the courts to question the correctness of this view,
and many reasons readily occur to the mind by which it may be
sustained.    In popular estimation the shame of the seduction is
lessened to some extent by the fact of marriage—and to a very
great extent where the parties, as sometimes happens, continue
thereafter to live together in apparent amity.    Another con-
sideration of far-reaching importance is the effect of the mar-
riage to render the afterborn offspring legitimate.    Such legis-
lation may readily be justified upon this ground alone.

Bearing in mind the purpose of the legislation as thus stated,
it is apparent that such purpose may be effected just as well by
the marriage of the defendant to the complainant at one stage
of the prosecution as at another.    So long as the prosecution
has not ended, the marriage brings the case within the express
terms of the statute, and we think it constitutes a bar where,
as here, it takes place at any time before judgment.

Being apprised of the fact of the relator's marriage, it was
error for the learned judge of the Court of General Sessions
to pronounce judgment against him.    The relator's remedy was
to move in arrest of judgment, and upon the denial of that
motion, if it were denied, he could review the action of the
trial court upon appeal.    There was not, however, such an utter

lack of jurisdiction or power to pronounce judgment as en-
titled the relator to relief by habeas corpus. The Court of
General Sessions had jurisdiction of the defendant and of the
offense, and under the plea of guilty was empowered to pro-
nounce the sentence which it did pronounce unless the fact of
the defendant's marriage to the complainant was established
by competent proof. No one would think of questioning its
jurisdiction to render the judgment if it had determined that
no marriage had in fact taken place. The mere fact that the
marriage is admitted in this habeas corpus proceeding cannot
affect the question of the court's jurisdiction. Under these
circumstances we feel constrained to hold that the relator has
mistaken his remedy and has not shown himself to be entitled
to release by habeas corpus. As it does not appear that he
made any motion in arrest of judgment, or, indeed, that he
has taken any appeal, and as the time for an appeal must have
expired, the case is obviously a proper one for the exercise of
executive clemency under the view which we have taken as to
the proper construction of the statute.

The order should be affirmed.


VANN, J. (dissenting):

I concur in the excellent opinion of Judge Willard BART-
LETT in every respect, except his final conclusion that "the re-
lator has mistaken his remedy and has not shown himself en-
titled to release by habeas corpus."

The jurisdiction of a court to pronounce the judgment ren-
dered in a particular case is always open to question under a
writ of habeas corpus. The presumption in favor of jurisdic-
tion being one of fact, may be rebutted, although when juris-
diction depends on the existence of a certain fact and the court
has found the fact, the fact stands until reversed upon direct
review. Subject to this restriction any fact showing that the

court was without jurisdiction to render the judgment may be proved by common-law evidence in a proceeding under the Habeas Corpus Act. (*People ex rel. Frey v. Warden, etc.,* 100 N. Y. 20, 24; Code Civ. Pro. § 2039). Thus it may be shown that the court acted in a place without its territorial jurisdiction (*People v. McLeod,* 1 Hill, 377, notes), or that it was improperly constituted (Cowen & Hill's Notes to 1 Phillips Ev. 1003), or that the presiding judge was related to the defendant within the sixth degree, etc., etc. Such facts may be summarily inquired into on the return of the writ. (*People ex rel. Sinkler v. Terry,* 108 N. Y. 1, 11; Code Civ. Pro. § 2039). Want of jurisdiction means want of legal power to act and " if there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process." (*People ex rel. Tweed v. Liscomb,* 60 N. Y. 559, 571).

The jurisdiction of the Court of General Sessions to pronounce judgment in the case before us depends on the question whether, after the plea of guilty and before final judgment, the defendant had married the prosecutrix? That question is one of fact and is answered conclusively by the traverse of the return, for the failure to join issue thereon has the same effect as an admission upon demurrer. What is the legal effect of marriage under such circumstances? The original statute provided that the subsequent marriage might be " *plead in bar* of a *conviction,*" but the present statute provides that such marriage " *is a bar* to a *prosecution.*" The one was not self-executing, but required action on the part of the defendant; while the other executes itself and *ipso facto* acts as a bar without being pleaded. The command of the act now in force is unconditional, present in effect and conclusive. It prevents further prosecution, prohibits any step in that direction and makes illegal whatever may be attempted toward that end. A judg-

ment forbidden by statute is void, and a prosecution barred is a prosecution prohibited. The act operates the same as an unconditional repeal of section 284, intermediate the plea of guilty, on the twenty-fourth of April, and the final judgment, on the sixth of May.

Was the particular fact of marriage found to be wanting by the Court of General Sessions before sentence was pronounced? The record shows by conclusive admission that between the dates named " the defendant and Elsie Frankel, on whose complaint the defendant was indicted, intermarried in the Borough of Manhattan, New York city, *with the approval and consent of the court.*" The record further shows that the court, " Being advised of such marriage suspended judgment," and released the defendant.

The Court of General Sessions had complete jurisdiction of the subject-matter of the crime until the marriage took place, but thereupon and owing to that fact it lost jurisdiction by express command of the statute which made the fact a bar. The expression " is a bar to a prosecution " has the same meaning and effect as if the form of the command had been " the prosecution is barred," and " barred," said the great Coke, " signifieth legally a destruction forever." (Coke Litt. 372a). " Prosecution," as thus used, includes every step taken in a criminal action from and including the indictment to and including the final judgment, and a bar to a prosecution is the destruction forever of the right to take any one of those steps after the bar became effective.

When a statute provides that a certain act is a bar, not that it may be made, or may become one, but that it is one, nothing need be done to make the bar effective. No motion or appeal is necessary, because the legislature issued its command in the present tense and no court should allow prosecution to proceed in defiance of the legislative will as expressed in a valid statute.

"Is a bar to a prosecution" means that there shall be no further prosecution, and that means paralysis of judicial procedure in the particular case. The legislature pledged the honor of the State that if a certain act were done prosecution should cease, and the defendant performed, but the court did not. On the contrary it became the active agent of an illegal prosecution and deprived the defendant of his liberty in violation of law. This court is asked to sustain the illegal action because he did not move in arrest of judgment, or appeal, or take some technical step to prevent the direct violation by a court of justice of a lawful statute, which gave him his liberty provided he married the prosecutrix, and the record shows that with the knowledge and approval of the court itself, he married her within the time and under the conditions required. The time to move, plead or appeal apparently has expired and he is helpless, unless he can obtain relief through the great writ of liberty, which, searching into jurisdiction with remorseless energy, opens prison doors and strikes off chains whenever a court has condemned without power. No prisoner should be remitted to a plea for mercy when he is entitled to liberty as a matter of right. I am unwilling to take part in such a confession of weakness by the highest court in the State, when the law does not require it. The court should not adjudge itself incompetent to deal with a simple situation calling for relief from an illegal judicial act through the aid of the most powerful and effective remedy known to statute or common law. While we cannot review the judgment, or look at errors or irregularities, which can be corrected only by appeal, we can look at the jurisdiction of the court at the time it sentenced the defendant to imprisonment.

I think the dissenting judges below were right, that the order appealed from should be reversed, the writ sustained and the defendant discharged.

CULLEN, Ch. J., WERNER and HISCOCK, JJ., concur with WILLARD BARTLETT, J.; HAIGHT and CHASE, JJ., concur with VANN, J.

Order affirmed.