UNITED STATES of America,
Appellee,

v.

Anthony **FIOTTO** et al., Appellants.

Nos. 296, 297, 298, Dockets 71–1651,
71–1689 and 71–1690.

United States Court of Appeals,
Second Circuit.

Argued Nov. 18, 1971.

Decided Jan. 4, 1972.

Arnold Wallach, New York City (Lawrence Stern, New York City, on the brief), for appellant Robert James.

Herbert LeGrange, New York City (Andrew C. Risoli, New York City, on the brief), for appellants Peter Hombach and Vincenzo Saccoccio.

Harvey L. Greenberg, Brooklyn, N. Y., for appellant Anthony Fiotto.

Charles B. Updike, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for S. D. N. Y., Peter F. Rient, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, HAYS and MULLIGAN, Circuit Judges.

PER CURIAM:

Appellants appeal from judgments of conviction entered after a jury trial in the United States District Court for the Southern District of New York. Appellant Fiotto was convicted of knowingly receiving, concealing, and facilitating the transportation of heroin in violation of 21 U.S.C. §§ 173 and 174 (1964) (repealed 1970). All the appellants were convicted of conspiracy to violate §§ 173 and 174.

The evidence introduced at trial was sufficient to establish that appellants participated in or agreed to a common plan of drug trafficking from December 1966 to May 1970. In December, 1966 Roberto Largan, a Philippine national, arrived in New York and through a friend was introduced to Guillermo Prillo, also a Philippine national who was living and working in New York City. Largan told Prillo that he had some heroin for sale and asked Prillo if he knew anybody who would be interested in purchasing the narcotic. Prillo told Robert James of Largan's offer to sell, and James eventually introduced Prillo to Anthony Fiotto. The three then met with Largan who offered to sell a kilo of heroin for $25,000, with the three to receive 10% of the proceeds of the sale as a commission for locating a purchaser. When a purchaser was finally located, James telephoned Prillo and told him to notify Largan. By that time, however, Largan had returned to the Philippines. James, Prillo, and Fiotto thereupon met and telephoned Largan in the Philippines. Largan said the sale was still possible and said either he or an agent would bring the heroin to New York. The agent, Benito Lee, arrived in New York in March, 1967 with the heroin, and contacted Prillo who arranged a meeting with Fiotto and James at a restaurant. Peter Hombach joined the four at the restaurant, and James told Prillo and Lee that Hombach's brother-in-law was to be the purchaser. When Hombach saw his brother-in-law's car pass the restaurant, the group left the restaurant. Prillo, James, and Lee got into James's car, and Lee gave the bag, ostensibly containing heroin, to James, who handed it to Hombach who then departed. About an hour later Vincenzo Saccoccio returned with the package and said that the purchaser did not want to consummate the deal because the heroin was apparently synthetic. Lee accepted the return of the package containing the heroin. Several days later James, Prillo, and Lee met Fiotto and Hombach on West End Avenue. Lee gave James and then James gave Hombach the package containing the heroin. Hombach left with the package. Fiotto also left. The others remained in a parked car for about three hours, until Hombach returned with a shopping bag containing $6,000. The bag was given to James, who told Prillo to remove $1,000 as his share. The group then drove to Lee's apartment where they counted the remaining money.

In the spring of 1967 Largan returned to New York with two and one-half kilos of heroin. He met with Prillo, James, and Fiotto, and offered to sell the heroin for $10,000 per kilo. Fiotto and James said that they could arrange the sale. The transaction was completed several days later, with Fiotto and James giving Largan $7,500 for the heroin.

In May, 1968 one of Largan's agents, Mario Sunio, arrived in New York with two kilos of heroin. Prillo obtained a sample which he gave to James. Fiotto and James then met with Sunio. Whether the transaction was completed was not established at trial. During the same month another of Largan's agents, Guillermo Castillo, came to New York twice with two shipments of heroin which Fiotto received directly.

In May, 1970 Castillo was arrested in Seattle while attempting to smuggle two and one-half kilos of heroin into the United States. Castillo agreed to cooperate with federal officials by delivering the heroin while under surveillance. He named Fiotto as the receiver and had Fiotto's phone number in coded form. He telephoned Fiotto, told him that the

"souvenirs" (a code word for heroin) had arrived, and arranged a meeting at a coffee shop. The two met, and proceeded to a parking lot where Fiotto directed Castillo to place the bag containing the heroin into a car. Federal agents thereupon arrested Fiotto.

■ Appellant Fiotto claims that, because there was no evidence to establish that he had possession of the heroin seized when he was arrested, the jury should not have been charged as to the presumption of knowledge of illegal importation pursuant to 21 U.S.C. § 174 (1964) (repealed 1970). However Castillo testified that Fiotto directed him to put the bag containing the heroin into the car. That testimony was sufficient evidence of constructive control to provide a basis for use of the § 174 presumption. *See* United States v. Hernandez, 290 F.2d 86, 90 (2d Cir. 1961). Moreover the evidence showed that Fiotto had actual knowledge of the foreign origin and illegal importation of the drugs. He knew Largan and his agents were foreign nationals who made specific trips to the United States to deliver heroin.

Fiotto's claim that the trial judge erred in not calling Castillo to testify at a suppression hearing is frivolous.

■■ Appellants Hombach and Saccoccio urge that the evidence was insufficient to establish their membership in the conspiracy. From Hombach's presence and his activity at the restaurant and during the first aborted exchange, and his handling of the money and the heroin during the sale several days later, the jury was fully justified in concluding that he knowingly entered into an agreement with Fiotto, James, and Lee to dispose of the heroin. The evidence as to Saccoccio's actions in the March transaction—returning the heroin to Prillo, James, and Lee and delivering the message that the narcotic was not of the required quality—was sufficient to allow the jury to find that he had pre-viously agreed with the others to distribute the heroin.

■ Like Fiotto, Hombach and Saccoccio also claim that there was insufficient evidence of possession of heroin to invoke the statutory presumption of knowledge of illegal importation. Both appellants had possession of the bag containing the heroin at different times during the evening of the first attempted sale. Since Saccoccio relayed the message to Lee that his buyer believed the heroin to be synthetic, he cannot seriously claim that there was no evidence that the bag contained heroin. The clandestine character of the actions of those involved in the aborted sale, the conversation of the participants, the sale three days later of the same bag or package for $6,000, were circumstances from which the jury could infer that the packages which Hombach and Saccoccio had in their possession at various times did in fact contain heroin. See United States v. Agueci, 310 F.2d 817, 828–829 (2d Cir. 1962), cert. denied, Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963).

Appellant James claims that he was denied a fair trial by the "introduction against him of conspiracies and dealings" in which he played no part. James was shown to be the first person approached by Prillo. From December 1966 to May 1968 he directly participated in the events outlined above. James's substantial activities in furthering the conspiracy amply established his membership.

■ Appellants were sentenced pursuant to 26 U.S.C. § 7237 (1964) (repealed 1970). They claim that they should have been sentenced under the provisions of 21 U.S.C. § 841 (1970), which became effective May 1, 1971.[1]

Section 109 of Title 1 provides:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or lia-

---

1. This new sentencing provision does not contain the minimum five year provision which its predecessor, § 7237(b), did.

bility incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty . . . ."

The repealing act did not provide for such extinguishment. The Act of October 27, 1970, Pub.L. No. 91–513, § 1103(a), 84 Stat. 1294, repealing inter alia 26 U.S.C. § 7237 (1964) and 21 U.S.C. §§ 173 and 174 (1964), in addition to other sections, provides:

"Prosecutions for any violation of law occurring prior to . . . [May 1, 1971] shall not be affected by the repeals . . . [of former §§ 173, 174, and 7237] . . . or abated by reason thereof."

We do not agree with the result reached in United States v. Stephens, 449 F.2d 103 (9th Cir., (1971)), and hold that under these statutory provisions the imposition of sentence pursuant to the provisions of § 7237 was correct. See United States v. Kirby, 176 F.2d 101, 104 (2d Cir. 1949).

Affirmed.

Hays, Circuit Judge, filed concurring opinion.

**X,\* Petitioner-Appellant,**