**UNITED STATES of America**

v.

**Pauline CALDWELL et al.**

**Appeal of Audrey BRICKLEY.**

No. 72–1200.

United States Court of Appeals, Third Circuit.

Argued June 6, 1972.

Decided July 5, 1972.

Herbert G. Hardin, Philadelphia, Pa., for appellants.

Jeffrey Miller, Asst. U. S. Atty., Philadelphia, Pa. (Carl J. Melone, U. S. Atty., Jeffrey M. Miller, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before ADAMS, GIBBONS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This case raises an important problem of statutory construction dealing with the "savings provision" of the new drug abuse act that reorganized the federal criminal narcotics laws.

In late 1970, Congress enacted the Comprehensive Drug Abuse and Control Act, P.L. 91–513, 84 Stat. 1242, 21 U.S. C. § 801 et seq. That statute, effective May 1, 1971, altered the substantive provisions of the federal criminal laws relating to narcotic drugs and marihuana, and revised the penalty structure previously established for violations of the narcotics laws.

Whereas the old law specified mandatory sentences, the new Act enables judges to exercise discretion. However, the new Act contains a "savings provision," which reads:

"Prosecutions for any violation of law occurring prior to the effective date [of the Act] shall not be affected by the repeals or amendments * * *." P.L. 91–513, § 1103(a), reprinted at 21 U.S.C.A. § 171 (annotation).

On May 13, 1971, a federal grand jury indicted appellant Audrey Brickley and others for violations of the drug laws. The violations occurred prior to May 1, the effective date of the Act. After a jury trial at which two co-defendants were acquitted, appellant and another co-defendant were convicted of a conspiracy to sell cocaine and the sale of the drug. Appellant was sentenced under the provisions of the old law, 26 U. S.C. §§ 4705(a), 7237(d), to two mandatory five-year concurrent prison terms.

At the time of sentencing, the trial judge was faced with conflicting decisions from two courts of appeals: one holding that the sentencing procedures of the new Act applied to crimes committed before its effective date, United States v. Stephens, 449 F.2d 103 (9th

Cir. 1971) ; the other holding that the sentencing provisions of the new Act applied only to crimes committed after the effective date of the Act, United States v. Fiotto, 454 F.2d 252 (2d Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

Although the trial judge stated that if *Stephens* were the law, he would consider the imposition of a sentence less than the mandatory term, he indicated that he felt constrained to follow the interpretation of the Act found in the *Fiotto* case.

It is undisputed that the violation of law giving rise to this case occurred prior to the effective date of the Act. The appellant asserts two principal arguments: first, that the purpose of the "savings provision" is to prevent the abatement of "prosecutions which had already begun under the old act"; and second, that a prosecution is terminated by a judgment of conviction, so that the savings provisions cannot apply to frustrate the repeal of the mandatory sentencing sections.

The process of statutory construction is akin to a journey on a narrow and sometimes obscure path. The language of the legislature provides the map to guide the way, but on occasion the chart seemingly leads in the wrong direction. In such cases, it is tempting for judges, in order to correct what appears to be the error, to supply either the meaning they deem appropriate, or the meaning they believe the legislature sought. Yet, our tripartite system of government requires that judges be pathfinders rather than trail-blazers, and we must follow the course set for us even though it appears that the destination is not the one the legislature may have desired.

■ The first of appellant's contentions does not present a difficult question of statutory construction. The words of the statute regarding the question of abatement are unequivocal. Appellant would have us limit the Act by interpreting it to read "Prosecutions initiated prior to the effective date for violations of law shall not be abated." However, to do so would require us, in effect, to redraft the Act in a manner inconsistent with its plain language. This we cannot do since the scope of the judicial function is to adjudicate, not legislate.[1]

The appellant's second point, dealing with the term "prosecution," presents a more difficult problem. Here, because of the split among the Circuits,[2] we are faced with a case "in which there is a fair contest between two readings, neither of which comes without respectable title deeds." Frankfurter, *supra*, at 43–44.

■ Appellant contends that one of the congressional purposes behind the Comprehensive Drug Abuse and Control Act was to give maximum flexibility to sentencing judges. This assertion is amply borne out by the legislative history. *See* H. R. Rep. No. 91–1444, 91st Cong., 2d Sess. (1970), reprinted in Vol. 3, 1970 U.S.C.C.A. pp. 4566, 4675. Therefore, appellant urges, in order to facilitate this purpose, we should construe "prosecution" so as not to include the sentencing phase of the trial. Thus the trial judge would be free to disregard the minimum mandatory sentences required by the old law. "But the purpose which a court must effectuate is not that which Congress *should* have enacted, or *would* have. It is that which it *did* enact, however, inaptly. * * *" Frankfurter, *supra*, at 55 (emphasis added). The statute we are concerned with mandates that certain "prosecu-

---

1. *See* Frankfurter, Some Reflection on the Reading of Statutes, reprinted in Essays on Jurisprudence from the Columbia Law Review, 43, 50–51 (1963).

2. *Compare* United States v. Stephens *supra*, and Belt v. Turner, 25 Utah 2d 230,

479 P.2d 791 (1971), *with* United States v. Bradley, 455 F.2d 1181 (1st Cir. 1972), cert. granted, 407 U.S. 908, 92 S.Ct. 2438, 32 L.Ed.2d 682 (1972), *and* United States v. Fiotto, *supra*.

tions" shall not be "affected"[3] by the repealer sections.

"Prosecution" is a term of legal art. Mr. Justice Holmes has noted that statutes utilize "familiar legal expressions in their familiar legal sense." Henry v. United States, 251 U.S. 393, 395, 40 S. Ct. 185, 186, 64 L.Ed. 322 (1920), and therefore we must survey the boundaries of "prosecution" from a legal perspective.

The *Stephens* case, *supra*, held:

"Prosecution ends with judgment. The purpose of the section has been served when judgment under the old Act has been entered and abatement of proceedings has been avoided. At that point litigation has ended and appeal is available. Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943). What occurs thereafter—the manner in which judgment is carried out, executed or satisfied, and whether or not it is suspended—in no way affects the prosecution of the case." 449 F.2d at 105.

*Fiotto* reached an opposite conclusion from that found in *Stephens*, although the Second Circuit did not explicate its reasoning in its per curiam opinion. 454 F.2d at 255. The First Circuit, in United States v. Bradley, *supra*, disagreed with the Ninth Circuit on the ground that the *Stephens* decision was premised upon an incorrect analysis of the holding of Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943). The Court of Appeals for the First Circuit distinguished *Korematsu*, correctly, in our opinion, because in *Korematsu*, the defendant had been informally placed on probation and "no further court order was anticipat-

ed." 455 F.2d at 1191. Thus, the proceedings in *Korematsu* were final for purposes of appeal even though there had been no formal sentencing. The *Bradley* court relied upon Berman v. United States, 302 U.S. 211, 212, 58 S. Ct. 164, 166, 82 L.Ed. 204 (1937), where the Supreme Court noted "[f]inal judgment in a criminal case means sentence. The sentence is the judgment."

In United States v. Gonware, 415 F.2d 82 (9th Cir. 1969), the court was defining "prosecution" as used in a bail-bond contract. A convicted defendant had pleaded guilty and had been sentenced, but execution of the sentence was stayed for two days. During that period, he fled and the district court ordered the bail-bond forfeited. The Court of Appeals stated that "[p]rosecution is not completed in a criminal case until the defendant begins to serve his sentence."[4] *Id.* at 84.

The view that a prosecution is not terminated until sentence is imposed is supported by a myriad of state cases. People ex rel. Scharff v. Frost, 198 N.Y. 110, 91 N.E. 376 (Ct. of App. 1910), is a functional example. There, a defendant had seduced the prosecutrix, was tried for seduction and pleaded guilty. Prior to sentencing, the defendant married the prosecutrix and the judgment was suspended. Later, possibly because the defendant deserted his wife, the former prosecutrix, the suspension was revoked and the defendant was incarcerated. The defendant then filed a writ of habeas corpus, asserting that since the criminal statute provided that a subsequent marriage would operate as a "bar to prosecution," the trial court had no jurisdiction to impose the sentence. The New York Court of Appeals agreed that

---

3. "Affected" is a word of ordinary and clear meaning. The transitive verb "affect" is defined as "to produce a material influence upon or alteration in." Webster's Third New International Dictionary of the English Language (Unabridged) (1966). Accordingly, courts may not by virtue of the Act, do anything

that would influence or alter the course of a prosecution brought under the prior law. Therefore, the resolution of this case turns solely on the parameters of the word "prosecutions."

4. The *Stephens* court did not distinguish or overrule *Gonware*.

it was error for the trial court to have pronounced a sentence because sentencing was a stage of prosecution barred by the statute, once the marriage took place, but that habeas relief was unavailable, since the marriage should have been pleaded as an affirmative defense. The dissenting judge argued that the marriage had the same effect as a repeal of the statute and thus the court had no jurisdiction. The entire court agreed that a prosecution was not terminated until sentence was imposed.

■■ We are led by the weight of authority to the conclusion that the word "prosecution," in a legal sense, includes the act of sentencing. Accordingly, we must construe the "savings provision" of Section 1103(a) to mean that sentencing for violations of the old Act shall not be affected by the new Act. Having reached this conclusion, it becomes clear that the provisions of 1 U. S.C. § 109[5] have the effect of preserving the penalties prescribed by 26 U.S.C. §§ 4705(a) and 7237(d), since Congress did not otherwise provide. See United States v. Reisinger, 128 U.S. 398, 402, 9 S.Ct. 99, 32 L.Ed. 480 (1888); Lovely v. United States, 175 F.2d 312, 315–318 (4th Cir.), cert. denied, 338 U.S. 834, 70 S.Ct. 38, 94 L.Ed. 508 (1949); accord; United States v. Bradley, supra; United States v. Fiotto, supra.

We reach the result set forth above most reluctantly. Certainly the intention of Congress was to provide sentencing judges with flexibility so that the punishment could fit the crime, and we are not disposed lightly to impede the attainment of this objective. The facts of this case, indicating that appellant was but peripherally involved in the criminal acts, demonstrate the wisdom of that policy. Nevertheless, in the words of Mr. Justice Cardozo: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take this statute as we find it." Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 420, 77 L.Ed. 1004 (1933).

We are aware that having decided the case as we have, it is possible that sometime in the future two defendants may receive different penalties for having committed essentially the same crimes —although at different times. Such a result may be considered anomalous, but it is Congress that has drawn the line. If penalties are to differ because of an arbitrarily selected date, it seems fairer that the severity of the penalty depend upon the voluntary act of a defendant in choosing the date of his criminal conduct than upon the date of sentencing, which could vary with the fortuities of criminal proceedings.[6] See Belt v. Turner, supra (dissenting opinion).

For the reasons stated above, the judgment of the district court will be affirmed.

---

5. "The repeal of any statute shall not have the effect to release or extinguish any penalty or forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in effect for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability * * *." 1 U.S.C. § 109.

6. Evidently Congress made a similar judgment when it enacted the Youth Correction Act. See 18 U.S.C. § 5022.