**UNITED STATES of America,
Appellee,**

v.

**James Bernard SINGLETON, Defendant-
Appellant.**

**No. 499, Docket 71-1999.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 4, 1972.

Decided May 12, 1972.

**1150**

Harry C. Batchelder, Jr., New York City (John J. Witmeyer III, and Henry Huntington Rossbacher, New York City, on the brief), for appellant.

John M. Walker, Jr., Asst. U. S. Atty., Southern District of New York (Whitney North Seymour, Jr., U. S. Atty., and Peter F. Rient, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before ANDERSON and OAKES, Circuit Judges, and CLARIE, District Judge.*

ANDERSON, Circuit Judge:

James Singleton, convicted under 26 U.S.C. §§ 4705(a) and 7237 for the sale of a narcotic to an undercover F.B.I. agent, asserts on this appeal that he was denied a speedy trial, that he was convicted upon the impermissible use of a deposition of a key Government witness, and that he was improperly sentenced. The sufficiency of the evidence is not in question; and these claims do not require a detailed exposition of all of the facts in the case.

In essence, Singleton was charged with making a sale of approximately 139.5 grams of cocaine for $1800 to Agent Frederick Ford in New York City during the period August 20 to 22, 1969. Government informer Samuel Morris helped to arrange the sale and served as a middleman in many of the dealings.

The complaint was made against Singleton on January 14, 1970, and he was arrested on January 22, 1970; but, upon his offer to cooperate with the Government in its narcotics investigations, he was released on his own recognizance the same day. The indictment was returned March 10, 1971, and the case was first set down for trial on April 22, 1971, but it was then adjourned to May 18, 1971, at the defendant's request. Although Morris was present in New York and ready to testify in April, it was determined on May 17th that he was too ill with granulocytic leukemia to leave his home in Mobile, Alabama. Thereupon, the trial court granted the Government's motion to take Morris' deposition in Mobile pursuant to 18 U.S.C. § 3503 and set the final trial date for July 22, 1971.

Singleton argues that his conviction should be reversed and his indictment dismissed because the length of time which was allowed to elapse between the date of the criminal acts and the date of the trial violated his Sixth Amendment right to a speedy trial, his Fifth Amendment right to due process, Rule 48(b) of Fed.Rules of Crim.P., and the Second Circuit rules regarding prompt disposition of criminal cases.

■ Whether or not one has been denied a speedy trial is a relative question which depends on a weighing of the circumstances, United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). The essential elements to consider are the length of delay, the reason for it, the extent of prejudice, and whether or not the defendant has

---

* Of the District of Connecticut, sitting by designation.

made specific demand for a speedy trial, United States v. Stein, 456 F.2d 844, 847 (2 Cir. 1972); United States v. Smalls, 438 F.2d 711 (2 Cir.), cert. denied, 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971); United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2 Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969).

It is the time between arrest and indictment, some thirteen months, which is pertinent, because the right to a speedy trial does not attach until a defendant has been arrested or has become an accused. As the Supreme Court said in United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971):

> "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of [the] speedy-trial provision of the Sixth Amendment."

The defendant makes no real claim of excessive post-indictment delay.

As to the reason for delay, the Government asserts it was brought about by the defendant's agreement to help in further narcotics investigations with the possibility that successful cooperation might lead to a dropping of charges. Singleton agrees that three months of the delay was the result of his offer to cooperate, but he claims that this offer was terminated during the spring of 1970. The United States Attorney claims that he postponed the seeking of an indictment pursuant to a request, dated June 9, 1970, from the Bureau of Narcotics and Dangerous Drugs until the Bureau notified him on January 26, 1971, that Singleton's help had been unsatisfactory. The trial court found that the delay was attributable to the defendant. This conclusion was supported by the evidence and is dispositive of appel-

lant's point. See United States v. Kabot, 295 F.2d 848, 852 (2 Cir. 1961), cert. denied, 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed. 2d 550 (1962); United States v. Lustman, 258 F.2d 475, 477 (2 Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed. 2d 109 (1958).

With regard to the claim of prejudice,[1] it may be assumed that the appellant sustained a certain amount from the fact that the court and jury did not have the opportunity to observe the witness Morris, but this was brought about by Singleton's unreadiness to go to trial when Morris was in court ready to testify on April 22.

There remains the element of waiver. It has long been the rule of this Circuit that the failure to demand a speedy trial constitutes a waiver of that right, Lustman, supra, at 478, Small, supra, 438 F.2d at 714; cf. Dickey v. Florida, 398 U.S. 30, 36, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). While Rule 8 of this court, concerning the prompt disposition of criminal cases, dispenses with the need for demand, waiver may still be considered as a relevant factor in deciding whether or not the constitutional right to a speedy trial has been violated.

In this case, appointed counsel moved to dismiss for lack of a speedy trial shortly after they were assigned in March, 1971. Certainly the failure of the defendant to seek such relief prior to that time should not weigh heavily against him. Nevertheless it is significant that, even though he admits that he stopped cooperating in the narcotics investigations, the defendant made no attempt to have the charges dropped or to seek the appointment of counsel. The delay between arrest and indictment was largely the responsibility of the defendant, and considering the fact that he was free on bail throughout the period and had every opportunity to demand

1. The claims of prejudice were that three potential defense witnesses either could not be found or disappeared prior to trial and that the informer Morris was unable to testify in person. It is not clear just what help, if any, the three missing witnesses would have been to the defense case.

a speedy trial in timely fashion but did not do so, we conclude there was no violation of Singleton's Sixth Amendment rights.

■■ Nor is there merit in the defendant's due process claim. If there is actual prejudice resulting from trial delay, there may be a claim under the Fifth Amendment, but not "every delay-caused detriment to a defendant's case should abort a criminal prosecution," *Marion, supra,* 404 U.S. at 324, 92 S.Ct. at 465. The only serious claim of prejudice was the inability of Morris to testify in person; however, that fact alone is not sufficient to establish that the defendant was denied due process, *see, e. g.,* United States v. Dickerson, 347 F.2d 783, 784 (2 Cir. 1965). Furthermore, the Government was prepared to go to trial in April, 1971, when Morris was able to testify, but the trial was postponed at the defendant's request, *see* United States v. Persico, 425 F.2d 1375, 1385 (2 Cir.), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970).

Because the primary purpose of Rule 48(b) is to enforce the right to a speedy trial, *Pollard, supra,* 352 U.S. at 361 n. 7, 77 S.Ct. 481; *see also,* United States v. Dooling, 406 F.2d 192, 196 (2 Cir.), cert. denied, Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969), no special attention need be given the Rule outside the discussion concerning the Sixth Amendment.

■ Nor is there any merit in Singleton's claim that the Second Circuit rules regarding prompt disposition of criminal cases require the charge to be dismissed. The Government had been ready for trial prior to July 5, 1971, when the Rules went into effect, see Rule 4; and the continuance granted by the court below for the taking of Morris' deposition was a delay permitted for "exceptional circumstances" under Rule 5(c) (ii) and (h).

Singleton also claims that the use of Morris' deposition at trial, even though it was taken and used in conformity with 18 U.S.C. § 3503, was a violation of his Sixth Amendment right of confrontation because the jury was deprived of the ability to judge the demeanor of the witness.

The Supreme Court in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), drawing from Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), and Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900), states two different tests for determining whether or not testimony is admissible. The first is that the witness is "actually unavailable, despite good-faith efforts of the State to produce him," *Green, supra,* 399 U.S. at 165, 90 S.Ct. at 1938, 1939, and the other is that the testimony may be used if "the declarant's inability to give live testimony is in no way the fault of the State," *Green, supra,* at 166, 90 S.Ct. at 1939.

Singleton, relying on the second test, asserts that Morris' inability to appear and testify in court was the fault of the Government in delaying the trial. Neither the precedents nor the evidence in the case, however, supports his position.

In most of the cases in which out-of-court testimony has been refused, the crucial point has been that unavailability had not been adequately shown, *Barber, supra,* (the prosecution made no attempt to obtain the witness from prison in another State); United States ex rel. Stubbs v. Mancusi, 442 F.2d 561 (2 Cir. 1971), cert. granted 404 U.S. 1014, 92 S. Ct. 671, 30 L.Ed.2d 661 (1972), (the prosecution had made no attempt to get the witness from Sweden); Government of Virgin Islands v. Aquino, 378 F.2d 540 (3 Cir. 1967) (the fact that the witness was without the jurisdiction and unavailable was not adequately shown); Holman v. Washington, 364 F.2d 618 (5 Cir. 1966) (inadequate showing that witness could not be produced). The situation in *Motes, supra,* in which testimony from the preliminary hearing was disallowed at trial was somewhat different, as the witness, a co-defendant who had confessed and was willing to testify, was unavailable in that he had escaped prior to trial because of the Government's negligence in keeping him in custody.

On the other hand, in most of the cases where there was actual unavailability, the testimony has generally been allowed. For example, in Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), the Court permitted the use, at a second trial, of the testimony of two witnesses who had died after the first trial, even though the second trial was required solely because a bailiff had made prejudicial remarks to several jurors and the jury had been permitted to read a newspaper account of the trial in the juryroom while still deliberating, see Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Even more to the point is United States v. Hughes, 411 F.2d 461 (2 Cir.), cert. denied, 396 U.S. 867, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969), where this court permitted the reading of testimony, at a second trial, when the witness had become insane after the first trial, even though the retrial was required because of prejudicial prosecutorial statements at the initial one, see United States v. Hughes, 389 F.2d 535 (2 Cir. 1968). See also, United States v. Bentvena, 319 F.2d 916, 941 (2 Cir.), cert. denied, [Ormento v. U. S., Di Pietro v. U. S., Fernandez v. U. S., Panico v. U. S., Galante v. U. S., Loicano v. U. S., Mancino v. U. S., Sciremammano v. U. S., Mirra v. U. S.] 375 U.S. 940, 84 S.Ct. 345, 346, 353, 354, 355, 360, 11 L.Ed.2d 271, 272; (1963), where the court permitted the use of prior trial testimony when a Government witness refused to return from Canada.

Because the absence of almost any Government witness may be traced in some part to governmental action or inaction, such as the failure to have an instantaneous trial, the line should not be drawn as tightly as the defendant asserts.

■ In the present case, Morris' testimony was taken under oath, in the presence of both Singleton and his attorney, and the entire testimony, which included a full cross-examination,[2] was transcribed. See Green, supra, 399 U.S. at 165, 90 S.Ct. 1930; see also, Barber, supra; Pointer v. Texas, 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Mattox, supra. Therefore, as the witness was actually unavailable and the reason for his absence was not attributable to wilful or negligent Government action or omission, the use of his deposition at trial was constitutionally permissible.

■ Singleton, however, also challenges the use of the deposition under the terms of 18 U.S.C. § 3503(a),[3] which provides, for the first time, for the Government to take depositions in criminal actions. Subsection (a) permits a motion to the trial court to take the deposition, and subsection (f) states the circumstances, including the inability of a witness "to attend or testify because of sickness or infirmity," under which the deposition may be used at trial. The de-

2. The defendant claims that he was denied the right fully to cross-examine Morris in regard to any payments which he received from the Government; however, there was no curtailment of cross-examination on this point, and the Government stipulated at trial that Morris had received some pay, although for matters unrelated to this case.

3. 18 U.S.C. § 3503(a) reads as follows: "Whenever due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved, the court at any time after the filing of an indictment or information may upon motion of such party and notice to the parties order that the testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place. If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. A motion by the Government to obtain an order under this section shall contain certification by the Attorney General or his designee that the legal proceeding is against a person who is believed to have participated in an organized criminal activity."

fendant's attack is directed at two provisions in § 3503(a) which have yet to be construed by the courts. The first is the condition that the motion is only to be granted in "exceptional circumstances [when] it is in the interest of justice," which the defendant claims do not exist in this case. The House Judiciary Committee Report,[4] however, indicates that motions under § 3503(a) are to be granted for the same reasons permitted defendants by Fed.Rules of Crim.P., Rule 15(a), which provides for depositions, "[i]f it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice . . . ." This test is quite adequate, and we adopt it here for the purpose of defining "exceptional circumstances." Morris' situation fits it squarely.

Singleton also contends that the "certification by the Attorney General or his designee that the legal proceeding is against a person who is believed to have participated in an organized criminal activity" was invalid on both technical and substantive grounds; however, the defendant misunderstands the purpose and effect of this certification requirement which is not central to the overall structure of § 3503 or to its constitutionality, but was added by House amendment to the original bill "since the need for the deposing of Government witnesses appears to be most acute in cases involving *organized criminal activity*."[5]

This limitation on the use of § 3503 depositions is one to be exercised by the Government, and the decision whether or not a proceeding is against a person believed to have participated in organized criminal activity is to be made by the Attorney General or his designee and not by the court. The defendant's analogy to the necessity for a court to find probable cause under the Fourth Amendment is not apt because the wording of § 3503(a) indicates that Congress did not intend for the organized crime certification to be subjected to a judicial determination.[6]

 Congress' choice of the Attorney General or his designee to make the certification may have been to insure political accountability, *see* United States v. Robinson (5 Cir. Jan. 12, 1972) (No. 71–1058), or to centralize decision making, *cf.* United States v. St. Regis Paper Co., 355 F.2d 688, 693 (2 Cir. 1966), or because the Attorney General is in the best position to know, but for whatever reason, the trial court is not to make a *de novo* determination of whether or not the proceeding is against a person believed to have participated in an organized criminal activity. Unless the defendant shows bad faith on the part of the Government, the court is only to ascertain whether or not there has been a proper certification as required by statute.

 In the present case, the certification conformed with the statute in that it was given by Henry Petersen, Deputy, Assistant Attorney General, as designated by the Attorney General, see Order Number 452–71, 36 Fed.Reg. 2601

---

4. H.R.Rep. No. 91–1549, U.S.Code Cong. & Admin.News, pp. 4007, 4025 (1970).

5. House Committee Report, *supra*, note 4.

6. A better analogy would be to various statutes, e. g. 18 U.S.C. §§ 2514, 3486(c), 6003, which require the approval of the Attorney General of a United States Attorney's decision that it is in the public interest to grant immunity to a witness in order to compel his testimony. The courts have accepted such approval as they have

construed it as beyond their jurisdiction to make their own determination of whether or not the grant of immunity is justified in the public interest, Ullmann v. United States, 350 U.S. 422, 432–434, 76 S.Ct. 497, 100 L.Ed. 511 (1956). *Cf.*, In re Russo, 448 F.2d 369 (9 Cir. 1971) ; and Licata v. United States, 429 F.2d 1177 (9 Cir.), vac. as moot, 400 U.S. 938, 91 S.Ct. 239, 27 L.Ed.2d 243 (1970), with In re Vericker, 446 F.2d 244, 247 (2 Cir. 1971).

(Feb. 9, 1971).[7] The certification need be in no specific technical form, although it should preferably be in writing, *cf.* Licata v. United States, 429 F.2d 1177, 1180 (9 Cir.), vacated as moot, 400 U.S. 938, 91 S.Ct. 239, 27 L.Ed.2d 243 (1970).

Furthermore, there was no showing of bad faith on the part of the Government; in fact, trafficking in narcotics was one of the specific evils engaged in by organized crime which Congress sought to attack through the Organized Crime Control Act of 1970.[8]

Singleton's final challenge on appeal is to the mandatory five year minimum sentence imposed under 26 U.S.C. §§ 7237(b) and (d) (repealed effective May 1, 1971), claiming that he should have been sentenced under the more liberal provisions of 21 U.S.C. § 841(b) (1) (A), which replaced § 7237. This issue was, however, foreclosed adversely to him in this Circuit by United States v. Fiotto, 454 F.2d 252 (2 Cir. Jan 4, 1972), petition for cert. pending, 40 U.S.L.W. 3434 (March 14, 1972).

Judgment of conviction and sentence affirmed.

OAKES, Circuit Judge (dissenting):

I respectfully dissent, agreeing with the majority on the speedy trial claims but disagreeing in respect to the use of Morris's deposition. We are talking here about the use of a deposition given before trial, not about the use of testimony given at a previous trial. There are at last two substantial differences between the two. First, at the time a deposition of a prosecution witness is taken the defense may not be prepared adequately to cross-examine, while prior trial testimony is used only at a time when the defendant is presumably ready for trial. This was apparently the basis for the objection by the Association of the Bar of the City of New York to the deposition procedure here established. See 1970 U.S.Code Cong. & Admin.News p. 4090. The second difference is that the testimony of a witness at a prior trial has been subjected at least once to the crucible of in-court scrutiny by judge and jury. This is, perhaps, another way of saying that testimony in the solemn, impressive atmosphere of a federal courtroom, before the eyes of a keen judge and an observant jury, may be given with a litle more care, deliberation and accuracy on the part of the witness than it might be given in some office cr room before a notary public.[1]

These differences have been deemed insufficient to warrant different consti-

---

7. The certification letter reads as follows:

> May 11, 1971
>
> Mr. Whitney North Seymour, Jr.
> United States Attorney
> New York, New York
> Dear Mr. Seymour:
>
> Pursuant to your request to obtain an order granting the taking of a deposition from Samuel Morris, I hereby certify, pursuant to authority conferred by Attorney General Order No. 452-71, dated January 30, 1971, that the case of United States v. James Bernard Singleton, is a legal proceeding against a person who is believed to have participated in organized criminal activity.
>
> Sincerely,
> /s/ Henry E. Petersen
> HENRY E. PETERSEN
> Deputy Assistant Attorney General

8. See Statement of Findings and Purpose, Pub.L. No. 91–452, 84 Stat. 922, U.S. Code Cong. & Admin.News p. 1073 (1970). *Cf.* 18 U.S.C. § 1961(1) (A).

1. *See* Ryland, J., in State v. McO'Blenis, 24 Mo. 402, 421 (1857) ("There are many things, aside from the literal import of the words uttered by the witness while testifying, on which the value of his evidence depends. These it is impossible to transfer to paper. Taken in the aggregate, they constitute a vast moral power in eliciting the truth, all of which is lost when the examination is had out of court and the mere words of the witness are reproduced in the form of a deposition."); *and see* Lord Strafford's plea in his November, 1680, impeachment: "I beg your lordships that he [the witness Dugdale] may look me in the face, and give his evidence, as the law is . . . . I desire the letter of the law, which says, my accuser shall come face to face." 7 Howell's State Trials 1293, 1341 (Cobbett's ed. 1810). *See also* the trial of Sir Walter Raleigh for treason in 1603, referred to in California v. Green, 399 U.S. 149, 157 n. 10,

tutional treatment of pretrial depositions and prior trial testimony in civil cases as a matter of due process of law. In criminal cases, however, it seems to me that these differences are critical, for we have the explicit precept of the sixth amendment that an accused has the right "to be confronted with the witnesses against him." Thus my dissent rests on two premises, the first of which is that the majority's supporting cases, which permit the use of testimony given at a prior trial,[2] are wholly inapposite to the controversy we are here called upon to decide; and the second is that the introduction at trial of pretrial depositions against an accused is—at the very least—of extremely doubtful constitutional validity. *See* Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); 8 J. Moore, Federal Practice ¶ 15.02, at 15–5 (2d ed. 1970).

Concerning that constitutional issue, I think what the Supreme Court said in Mattox v. United States, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895), provides the appropriate guideline by which we should measure appellant's confrontation clause claim:

The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

It is true that the Advisory Committee, in support of its proposed Rule 15 which would permit the use of depositions taken at the behest of the Government and which previously had been rejected by the Supreme Court, has stated, "To the extent that the rejection was based upon doubts as to the constitutionality of such a proposal, those doubts now seem re-

---

90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). While Singleton was ready for trial at the time of taking Morris's deposition, and was there to confront him face to face, no trier of fact has had the opportunity at any time to observe the prosecution's chief witness at the time of that confrontation.

2. *E. g.*, Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (preliminary trial testimony inadmissible where absence of deponent is due to negligence of prosecution); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (prior trial testimony of deceased witness admissible); Mattox v. United States, 146 U.S. 140, 152, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (dying declarations admissible); United States v. Hughes, 411 F.2d 461 (2 Cir.), cert. denied, 396 U.S. 867, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969); United States v. Bentvena, 319 F.2d 916, 941 (2d Cir.), cert. denied [Ormento v. U. S., Di Pietro v. U. S., Fernandez v. U. S., Panico v. U. S., Galante v. U. S., Loicano v. U. S., Mancino v. U. S., Sciremammano v. U. S., Mirra v. U. S.], 375 U.S. 940, 84 S.Ct.

345, 346, 353, 354, 355, 360, 11 L.Ed.2d 271, 272 (1963). California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), does not go to our problem at all. There the witness whose prior statements were permitted to be used as substantive evidence was *in fact in court*, present to testify and subject to cross-examination, albeit uncooperative and evasive. Thus *Green* goes no further than to say that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, *as long as the declarant is testifying as a witness and subject to full and effective cross-examination.*" 399 U.S. at 158, 90 S.Ct. at 1935 (emphasis supplied). Moreover, *Green* was not in a jury trial context and the witness's testimony was given at a preliminary hearing. See Report of the Committee on Trial Practice and Technique for the Second Circuit of the United States Court of Appeals Relating to the Advisory Committee's Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal and Appellate Procedure 17–20 (mimeographed) (Jan. 6, 1972) (concluding that Proposed Rule 15 "should be rejected").

solved by California v. Green . . . ." Committee Note to proposed amendment to Rule 15, April 1971 Preliminary Draft, at 31, quoted in 8 J. Moore, Federal Practice ¶ 15.02, at 150 (Supp. 1971). To author Cipes, and to me, however, they seem nothing of the sort, for the reasons stated in note 2 *supra*. See 8 J. Moore, Federal Practice ¶ 15.02, at 150–53 (Supp.1971).

Perhaps it would be sufficient to stop at this point, and meet head on the issue whether the Organized Crime Control Act of 1970, in permitting the use of pretrial depositions at trial, is constitutional.[3] The proper exercise of judicial restraint, however, requires that the constitutional issue be avoided if the statute does not apply in any event. Does that Act apply to Singleton's case so as to permit the use of a pretrial deposition against him?

I leave aside the issue whether the certification by a Deputy Assistant Attorney General was sufficient under the wording of the statute, as to which there may be doubt. *Compare* United States v. Pisacano, 459 F.2d 259 (2d Cir., filed April 7, 1972), with United States v. Robinson, No. 71–1058 (5th Cir., filed Jan. 12, 1972). For purposes hereof it is enough to assume its sufficiency.

Is Singleton's trafficking in narcotics (in this case allegedly selling $1,800 worth of cocaine) an "organized criminal activity" within 18 U.S.C. § 3503? Moreover, are we conclusively bound by the Attorney General's certification, as the majority here suggests,[4] so that as a court we cannot even look into the propriety of its issuance?

I do not think we may abdicate the judicial function quite so completely to the prosecution. The determination of what is "organized criminal activity" may affect the whole course of the trial. I agree with Professor Kenneth Culp Davis, speaking with reference to delegated powers, that "[s]afeguards are usually more important than standards, although both may be important." Administrative Law § 2.00–5(b), at 54 (Supp.1970). I cannot join my brethren in so readily discarding all the safeguards in a situation in which there are no standards.[5]

What is an "organized criminal activity"? The Organized Crime Control Act of 1970 itself does not purport to tell us. Although there are a number of rather precise definitions in other parts of the Act,[6] "organized crime" is not defined, much less "organized criminal activity."[7] Even the House Judiciary

---

3. R. Cipes, writing the criminal volumes of Moore's Federal Practice, calls the deposition feature of the Act "simply a trial balloon for the government," and goes on to say: "Civil libertarians who have long been sensitive to governmental abuse of process and procedure in 'organized crime' prosecutions—seeing this as an 'early warning signal'—have now, at least in this writer's opinion, gained great credibility with the issuance of the 1971 proposed amendment to Rule 15 [permitting the use of depositions generally]." 8 J. Moore, Federal Practice ¶ 15.02, at 149 (Supp.1971).

4. The majority writes, at p. 1154 *supra*, " . . . the decision whether or not a proceeding is against a person believed to have participated in organized criminal activity is to be made by the Attorney General or his designee and not by the court."

5. Here there is not the slightest suggestion that the Department of Justice has set up its own standards as to what is an "organized criminal activity." *Cf.* K. Davis, Administrative Law § 2.00–5(b), at 54 (Supp.1970).

6. *See, e. g.*, 18 U.S.C. § 1511(b), defining an "illegal gambling business" as one remaining in substantially continuous operation for 30 days or grossing $2,000 in any one day.

7. "While this imprecise standard is enough to raise the hackles of any constitutional lawyer—at least one of whom will hopefully have an opportunity to take on the Attorney General in the appellate courts —that is hardly the only vice in the new deposition procedure." 8 J. Moore, Federal Practice ¶ 15.02, at 149 (Supp. 1971). And see the dissent to the House Judiciary Report by Representatives John Conyers, Abner Mikva and William Ryan, printed in 1970 U.S.Code Cong. &

Committee's report will be searched in vain for a definition, although it does contain chapters relating to "syndicated gambling" and to "racketeer influenced and corrupt organizations." H.R.Rep. No.91–1549, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Admin.News, pp. 4007, 4009, 4010. The closest anything in the legislative history comes to giving us any indication of what Congress was talking about is Representative Poff's reference on the House floor to "access to collective criminal power."[8] 116 Cong.Rec. 9710 (daily ed. Oct. 7, 1970). If to be an "organized criminal activity" the activity must be one which would be shielded by "access to collective criminal power" —as good a definition as any, I suspect—there is nothing in this record to show that Singleton had any such "access" or was himself a part of or minion to or distributor for or agent of or buyer from "collective criminal power." The majority seems to imply that because organized crime does traffic in narcotics anyone who traffics in narcotics is engaged in an organized criminal activity. If so there are doubtless thousands of youths on high school and college campuses today who unknowingly participate in "organized crime." All that appears in this record, and this in a telegram from the United States Attorney in New York to the Department

of Justice, is that "Singleton has been dealing in narcotics for at least 12 years with four prior drug arrests dating back to 1959."[9]

A case for the use of pretrial depositions in situations in which "collective criminal power" is involved could be made, I suppose, on the basis that the life of the deponent might be endangered by the defendant's access to criminal power. *Cf.* Note, Prosecutorial Discovery Under Proposed Rule 16, 85 Harv. L.Rev. 994, 1014–16 (1972). The government might further, either by legislation or administrative standards, seek to establish a presumption that any sale of a given significant amount of a given narcotic is an organized criminal activity since to acquire possession of such an amount would require some "access to collective criminal power." But until this has been done, we cannot willy-nilly permit such a loosely drawn statute, adopted without safeguards or standards or definitions, to apply to anyone the government seeks to have it apply to— much less when the validity of the underlying statute would thereby be cast into the gravest doubt.

It is possible that this case goes further than any other in the history of federal jurisprudence to make the sixth amendment and its confrontation clause a nullity.[10] *Compare* Pointer v. Texas,

---

Admin.News, pp. 4076, 4091: "Even in its draftsmanship it would rather equivocate than fight. Thus one searches the bill in vain for a definition of 'organized crime.' In a criminal statute where the term 'organized crime' is an operative device, it is not defined. When asked about the omission, the drafters explained that it was impossible to define, but everybody knew what it was."

8. We must, of course, bear in mind Mr. Justice Jackson's admonitions about probing too casually into what is called legislative history. See Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 395–396, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (concurring opinion).

9. Appellant's counsel tells us the telegram is factually incorrect. Apparently appellant, a black, was convicted of robbery

when he was 16 and of marijuana possession in 1963 at age 20 and has had two other arrests, one resulting in a refusal to indict and one in dismissal by the court. The reference to his "dealing in narcotics" is, of course, hearsay. But even if all of the allegations of the government's telegram were true, there is no indication that he is in an "organized criminal activity" in the sense I believe Congress intended the phrase.

10. *See*, in American Bar Foundation, Sources of Our Liberties (R. Perry ed. 1959), the following: Va.Const. § 8 (June 12, 1776), at 312; Pa.Const. art. IX (Aug. 16, 1776), at 330; Del. Declaration of Rights § 14 (Sept. 11, 1776), at 339; Md.Const. art. XIX (Nov. 3, 1776), at 348; N.C.Const. art. VII (Dec. 14, 1776), at 355; Vt.Const. art. X

380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965) ("There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."), *with* West v. Louisiana, 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965 (1904) (deposition permissible in state case). Proper procedural protection is the keystone of the structure of American civil liberties. Today's decision, I fear, weakens that structure.

I would reverse and remand.

(July 8, 1777), at 366. The inclusion of a confrontation clause in the constitutions adopted in the early revolutionary era suggests that the right is pretty fundamental. *Id.* at 429.