**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Herbert John KEY, Defendant-Appellant.**

**No. 71-1570.**

United States Court of Appeals, Tenth Circuit.

April 12, 1972.

Certiorari Denied June 26, 1972. See 92 S.Ct. 2510.

**1190**

Stephen M. Todd, Topeka, Kan., for defendant-appellant.

Adrian M. Farver, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., and E. Edward Johnson, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before HILL, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant was convicted on all four counts of an indictment which charged him, in specific detail, with the transportation of falsely made, forged, altered and counterfeited securities in interstate commerce with fraudulent intent, contrary to 18 U.S.C. § 2314 and 18 U.S.C. § 2.[1] The appeal is concerned with the insufficiency of the evidence in support of the several verdicts and, secondly, with the alleged violation of the appellant's right to a speedy trial.

---

1. These sections provide in pertinent part:

\* \* \* \* \*

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited;

\* \* \* \* \*

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. 18 U.S.C. § 2314.

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. 18 U.S.C. § 2.

## I.

Each of the counts of the indictment is detailed and specific. It describes the checks as being imprinted with the name ABC Bonding Company of Kansas City, Missouri, each check having its own number. The indictment also alleges that each of the checks was purportedly signed by Robert W. Goulden. The four checks in question were, as noted above, drawn on ABC Bonding Company, and the drawee was Columbia National Bank in Kansas City, Missouri. The amounts of these checks varied from $128.00 to $138.00. The purported payee on each of the checks was one Patricia R. Mueller, and the purported drawer was Robert W. Goulden who was the bonding company's president. An unidentified woman cashed each of the checks.

Robert W. Goulden testified that the signature appearing on the checks was not his and further testified that the checks in question were part of a number of checks which were stolen from his office in July 1968. Appellant had shared office space with Goulden during the month of July, the same month that the checks disappeared, and they were discovered to have been missing soon after appellant moved out.

The prosecution presented one Vickie Sheley as a witness. She testified that on July 27, 1968, she was present in a room in Topeka, Kansas, while appellant and three other persons were preparing a group of checks which were ABC Bonding Company printed checks and that the payee on these was Patricia Mueller. She further testified that some of the checks were signed by appellant. She said that errors were made in the preparation of some of the checks and that these were destroyed. She also testified that after the checks were prepared appellant and three others left the room, and, although the three others did

return later, appellant did not. Mrs. Sheley also testified that she obtained a Social Security card from Patricia Mueller; whether this was used in passing the checks is unclear from the record. She further stated that she suspected that the checks would be negotiated by using this identification.

The defendant did not testify as a witness, but offered evidence to establish that he was not present in Topeka at the time in question. On this subject the government offered motel registration cards in the name of "H. J. Key" from a Topeka motel and a hotel. On behalf of the defendant an FBI agent was called, and he testified that handwriting and fingerprint checks on the checks in question were carried out, but neither the fingerprints nor the handwriting of the defendant could be identified.[2]

The evidence is clear that the checks in question satisfied the requirement that they were made, forged or counterfeited and that whoever prepared them knew of their spurious character. Nor is there any doubt that they were caused to be transported in interstate commerce.[3] Nor is the fact that the defendant was not a direct participant in the cashing of the checks an obstacle since he is alleged to have acted as an accessory before the fact. As a matter of fact, it would only be on the theory of accessory before the fact that the evidence could be held to have been sufficient since there is no evidence connecting the defendant directly with the passing of these checks. The issue of fact at trial was whether defendant was present in the room as witness Sheley testified.

█ The government's theory of the case is that the defendant was shown by the evidence to have been an aider and abettor or an accessory before the fact contrary to 18 U.S.C. § 2. In order for

---

2. The agent testified that none of the latent fingerprints found on the checks were defendant's, and the signatures were too jumbled to identify the writing as his.

3. United States v. Roselli, 432 F.2d 879, 899 n. 16 (9th Cir. 1970).

one to be guilty as an aider and abettor the evidence must establish that he had participated in the criminal transaction or transactions charged in the indictment. See United States v. Harris, 441 F.2d 1333, 1336 (10th Cir. 1971); King v. United States, 402 F.2d 289, 290–291 (10th Cir. 1968); White v. United States, 366 F.2d 474, 476 (10th Cir. 1966); Roth v. United States, 339 F.2d 863, 865 (10th Cir. 1964); Colosacco v. United States, 196 F.2d 165, 167 (10th Cir. 1952).

In *Roth* this court said that in order for a defendant to be an aider and abettor he must associate himself with the venture and must participate in it as something which he wishes to bring about, that he seeks by his action to make succeed.

And again, in *King*, the court said:

The trial court properly instructed the jury, in substance, that to be guilty of aiding and abetting by words spoken or acts done the defendant must wilfully associate himself in some way with the criminal venture by participating in it as something he wishes to bring about and by seeking to make it succeed by some action on his part. 402 F.2d at 290–291.

In *King* the only direct evidence in the main case was that defendant had driven his friend and associate, one Pack, to the store where Pack cashed the check. The defendant, whose guilt was questioned, had received some of the proceeds.

Cotton v. United States, 409 F.2d 1049 (10th Cir. 1969), involved the uttering of a government check stolen from a mail box. The only evidence was that the defendant Cotton was present when a confederate endorsed the check. Cotton left with his associate and returned with the proceeds. Cotton was shown, however, to have been involved in the processing of other stolen checks. It was held that Cotton's presence when the check was endorsed, his leaving with the three others with several checks, and his returning with the proceeds was legally sufficient to justify submission of the cause to the jury.

■ The case at bar leaves some things to be desired, but there are circumstances which show that the defendant wilfully associated himself with the criminal venture. First, he and he alone had access to the checks in Kansas City, Missouri; secondly, he was shown to have been in the Topeka area for a period of some two weeks in various motels, coinciding with the time of cashing the checks; thirdly, an eye witness testified to his preparing at least a part of the checks while his confederates prepared others. These basic facts give rise to the inference that the defendant wilfully associated himself with the criminal enterprise in question. Indeed it was open to the jury to find that the defendant engineered the enterprise.

We conclude that the evidence is sufficient and that the trial court was correct in submitting the case to the jury for its determination.

## II.

The second question is whether there has been a violation of the defendant's Sixth Amendment rights flowing from the delay in bringing defendant to trial. The acts giving rise to the offense took place on July 27, 1968. The indictment was returned on April 2, 1969, and trial was had on June 7–8, 1971. Since it appears on the surface to be an unjustifiable three year delay we must examine the underlying facts.

Soon after the return of the indictment defendant requested that his case be processed under the Rule 20 procedure. The United States Attorney readily agreed to this, and after some delay the defendant was given an opportunity to go forward under Rule 20; he refused, however, to plead guilty, a necessary prerequisite to a disposition under Rule 20, and the cause was transferred back to Topeka in October 1969.

Defendant continued to exchange letters with the United States Attorney sometimes demanding that he be tried,

but often requesting that prosecution await his release. The district attorney informed him on January 23, 1970, that in view of the termination of the Rule 20 proceedings the trial would have to await his release from the Alabama institution.[4] Nevertheless, on January 29, 1970, and in February 1970, defendant requested a trial as soon as possible. In response to a suggestion of the United States Attorney that the Rule 20 proceeding be again considered, defendant replied on April 7, 1970, that he did not intend to plead guilty and desired a trial as soon as possible. On April 7, 1970, the United States Attorney wrote that the trial would be set at the earliest possible date, but then the defendant changed his mind. He wrote three letters—May 25, July 2 and July 10—requesting that the trial be postponed until his release from the Montgomery, Alabama, imprisonment in June 1971, to which the United States Attorney replied that the trial would probably occur in October 1970 because of the court's instruction to dispose of delayed cases.

The final significant exchange of letters between the defendant and the United States Attorney was in January 1971. The defendant's letters show a marked change. Relying on Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), and other speedy trial decisions, he then demanded that he be given an immediate trial. Defendant's subsequent letters continued to demand a speedy trial, and, although the United States Attorney at one time indicated that it could be in April 1971, it did not come about until June 1971.

On June 21, 1971, some days after the trial, the defendant presented an affidavit in support of his alternative motion for a new trial or dismissal. In it he asserted that as a result of the delay he was ineligible for parole and trustee status; secondly, that his alibi witnesses were unable to recall dates and time due to the passage of time; thirdly, he stated that Mary Ellen Hanks, who was with him at all times relevant to the charge, had died by drowning on July 20, 1969. She would have testified, so he attests, that he had destroyed all the ABC checks he had before the date of the transactions in question.

As to the pre-indictment delay of nine months, the relatively recent opinion of the Supreme Court in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), held that the Sixth Amendment guarantee of speedy trial applies in most situations only after a person has been accused of a crime. The Supreme Court pointed out that the statute of limitations is the primary guarantee against bringing stale criminal charges.

The Court added:

> There is thus no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function. 92 S.Ct. at 465.

---

4. The Assistant United States Attorney wrote a very unthinking and injudicious letter. In it he said:

> This will acknowledge receipt of your letter of January 18 with reference to the Federal charge pending against you in the District of Kansas.
>
> Our file indicates that in October of 1969 proceedings were undertaken pursuant to Rule 20 of the Federal Rules of Criminal Procedure to have this case disposed of at Mobile, Alabama upon your plea of guilty to the Kansas charge. Subsequently, we were advised that you did not feel the charges were correct and refused to plead according to your earlier indication.
>
> Under the circumstances, it would not appear that any disposition of these charges can be made prior to your release of imprisonment in Alabama and the detainer will undoubtedly remain in effect and you will be returned to Kansas for trial after your release from your present custody.

The only saving grace is that it did not affect the defendant in the least. He continued unabated his exchange with the district attorney.

**1194**

The Court's decision acknowledged that actual prejudice to a defendant's right to a fair trial could change the result, but declined to elaborate as to the kind of prejudice that would suffice.

 The pre-indictment delay of nine months is not a basis of itself for dismissal, and the fact that a witness died soon thereafter does not constitute prejudice. It is not comparable to the eight years in *Dickey*, and there is no suggestion in the other decisions that such an unforeseeable happening is to be regarded as prejudice. We fail to see that there was other delay about which the defendant can complain since much of the time was taken up by the defendant in seeking to proceed under Rule 20. These negotiations were concluded in October 1969. The defendant is in no position to complain about delay which occurred while he was plea bargaining with the Montgomery, Alabama District Attorney or while seeking such arrangements with the Topeka office. *Cf.* United States v. Rosson, 441 F.2d 242, 247 (5th Cir. 1971).

Finally, the judge refused to accept his tendered plea, and there followed a period during which defendant requested that he not be tried until after his release from the Montgomery institution. It was not until January 1971 that the defendant asserted his right to a speedy trial in clear terms, and the subsequent delay is not shown to have been unreasonable.

There is no substantial evidence here that the government used the delay in order to prejudice the defendant's rights. The Assistant United States Attorney who communicated with the defendant did show an over-anxiety to dispose of the case under Rule 20, but the defendant seemed equally desirous of carrying on these Rule 20 negotiations. It reduces then ' to the delay that occurred between January 1971 and June 1971, at which latter time the trial was had. We do not say that five months'

delay could not be violative of the defendant's Sixth Amendment rights, but it does not appear to have prejudiced the defendant in this case.[5]

From the reading of the entire record, it would seem that the defendant hoped against hope that something would happen to the case and he himself was relying on the delay to erode the government's case as indeed it did.

The judgment of the district court is affirmed.

---

5. See Whitlock v. United States, 429 F.2d 942, 944 (10th Cir. 1970); *cf.* Trigg v. Moseley, 433 F.2d 364, 366 (10th Cir. 1970).