The UNITED STATES of America, Plaintiff,

v.

Bertram L. PODELL et al., Defendants.

No. 73 CR. 675.

United States District Court, S. D. New York.

Jan. 14, 1974.

Paul J. Curran, U. S. Atty., Southern District of N. Y., for plaintiff; Rudolph Giuliani, Joseph Jaffe, Edward J. Kuriansky, Asst. U. S. Attys., of counsel.

Robert Gould, New York City, for defendant Herbert S. Podell.

James M. La Rossa, New York City, for defendant Bertram L. Podell.

Rabin & Silverman, New York City, for defendant Martin Miller; I. Stephen Rabin, New York City, of counsel.

ROBERT L. CARTER, District Judge.

## OPINION

### I

The government moves by order to show cause, to be permitted to take the deposition of Ronald C. Kinsey and Albert Waldman, pursuant to Title 18, U. S.C. § 3503. The defendants are charged with conspiracy to defraud the government, accepting and giving bribes, conflict of interest, conspiracy to give false statements and giving false statements to the FBI, and perjury.

The court is advised by affidavit of government counsel that Kinsey, who resides in Seattle, Washington, suffered a severe heart attack on December 20, 1973; that he was hospitalized until January 4, 1973 and is now at home recuperating. Dr. John L. Petersen, Kinsey's physician, advises that Kinsey will not be able to travel before the end of March or early April; that the attack was nearly fatal; and that the earliest that Kinsey could possibly submit to oral interrogation is late January.

Mr. Kinsey was interviewed by the FBI on November 11 and 12, 1971 and gave a signed statement. He testified on May 3, 1973 before the grand jury.

His testimony is alleged to concern contacts by defendants Bertram L. Podell and Martin Miller with the Civil Aeronautics Board and to be critical to proof of the counts of conspiracy to defraud, bribery and conflict of interest.

Albert Waldman is 76 years old. He lives in Brooklyn. He has suffered two heart attacks and is fitted with a pacemaker. Waldman's physician, Dr. Harold S. Bard, has advised government counsel that his patient is in very precarious physical health. Waldman was interviewed by government counsel and was then placed under oath. His statement was reduced to writing in question and answer form and thereafter reviewed with him. His testimony is alleged to concern the procuring of false statements and is said to be critical to proof of the charge that defendant Herbert S. Podell participated in the preparation and signing of false statements.

■ I find that the unavailability of Kinsey and Waldman to testify has been adequately demonstrated.[1] Their precarious health, and in addition Waldman's age, render their presence in New York to testify at trial very doubtful,

and indeed, early deposition may be the only insurance the government has to preserve the testimony of these two key witnesses.[2]

In addition, it cannot be contended that the need to invoke Section 3503 results from any fault, failure, neglect or lack of diligence on the government's part. The government announced ready for trial in November, 1973, and the court was prepared to proceed with the trial at that time. The trial date of January 14, 1974, postponed to January 21, 1974, was set at the request and to suit the convenience of defense counsel. Thus, the threshold tests enunciated by the United States Supreme Court in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 and held by our Court of Appeals in United States v. Singleton, 460 F.2d 1148, 1152 (2d Cir. 1972) to be applicable in deciding a motion brought pursuant to Section 3503 have been met.

■ The right of the government to preserve a witness' testimony by deposition in a criminal proceeding is authorized under Section 3503(a) "whenever due to exceptional circumstances it is in the interest of justice."[3] The broad

1. The start of the trial cannot be postponed much beyond March 4th without interfering, and perhaps fatally whatever its outcome, with Bertram Podell's bid for re-election to Congress. While the defendant can avoid this consequence by waiving his objections to the government's motion, he cannot be required, in fairness, to choose between acquiescing in what he regards as a violation of his right to confront Waldman and Kinsey before the court and jury, and a trial date that will hinder his right to run for public office. Cf. Schware v. Board of Bar Examiners of the State of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). It is, moreover, in the public interest that the unsettled issue of Podell's guilt or innocence not influence the voting of his constituency. For these reasons, whatever the outcome of the effort to seek review in the Court of Appeals, no postponement of this trial will be granted beyond March 4, 1974.

2. The government's representations seem to me to be sufficient, and I cannot see that

more will be accomplished by an evidentiary hearing. However, since both counsel and the court regard it as a needless waste of energy to have this matter decided on review on the adequacy of the showing of unavailability, it was agreed that after the hearing on this motion, but prior to the filing of the court's memorandum, the government would file with the court the affidavits of Dr. Petersen and Dr. Bard confirming the government's representations. Dr. Petersen's affidavit has been filed with the court and it completely supports the government's representations. In addition, a medical history of Mr. Kinsey was attached in respect of his stay at The Swedish Hospital Medical Center in Seattle from December 20, 1973 to January 3, 1974. Dr. Petersen's affidavit, with the attachment, has been made a part of the file of this case.

3. Section 3503(a) reads as follows:
"(a) Whenever due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved, the court at any time after the filing of

sweep of the majority holding in *Singleton* has rendered unpersuasive defendants' argument that the government's motion must be denied as a violation of defendants' Sixth Amendment rights of confrontation. As I read the majority opinion in *Singleton*, all doubt concerning the constitutionality of Section 3503 and the right of the government to use the deposition of a witness in a criminal trial have been resolved in favor of the validity of the statute and the admissibility of such testimony.

## II

■ These considerations, however, do not settle the instant problem. The troublesome question for me concerns the certification. The statute requires that the government's motion be supported by a "certification by the Attorney General or his designee that the legal proceeding is against a person who is believed to have participated in organized criminal activity". Henry Petersen, Assistant Attorney General, has, in letters dated January 8, 1974, certified that this case "is a legal proceeding against a person who is believed to have participated in organized criminal activity." The Court in *Singleton* rejected the defendant's argument that the government must be required to establish to the trial court's satisfaction probable cause that the case is a proceeding against a person believed to have participated in organized criminal activity. *Singleton* admonishes that such a determination is the sole province of the Attorney General and trial courts are not empowered to make a *de novo* inquiry as to that issue, but it does hold that it is appropriate for the trial judge to decide

whether the certification has been made in good faith. I take that to mean that where a challenge of the good faith certification is made, as here, and there is nothing either in the nature of the crime, the background of the defendants or evidentiary support for the certification in the record, that the trial court is empowered to require more than the mere *pro forma* certification before the government's motion can be granted. A showing of bad faith entitles the court, as I read *Singleton*, to evaluate the certification.

The government certification, unlike that in *Singleton*, is not supported by any evidentiary showing that defendants have been engaged in criminal activities continuously over a long period; nor is there any representation that any of the defendants has been previously arrested or convicted of crime. Finally, and perhaps more critically, neither the crimes charged nor defendants' backgrounds would appear to meet the criteria which would empower the government to invoke the provisions of Section 3503.

Section 3503 does not constitute a blanket withdrawal of the Sixth Amendment right of confrontation before judge and jury in all criminal cases. Otherwise the required certification would be meaningless surplusage.

The provision was enacted as a part of the Organized Crime Control Act of 1970. Public Law 91–452; 84 Stat. 922. The purpose of the statute is defined as seeking "the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to

an indictment or information may upon motion of such party and notice to the parties order that the testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place. If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice of

the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. A motion by the Government to obtain an order under this section shall contain certification by the Attorney General or his designee that the legal proceeding is against a person who is believed to have participated in an organized criminal activity."

deal with the unlawful activities of those engaged in organized crime." The latter is described as "a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud and corruption." It is said to derive power through money "obtained from . . . syndicated gambling, loan sharking, the theft and fencing of property, the distribution of narcotics and other dangerous drugs, and other forms of social exploitation". Nowhere in the Act is "organized crime" or "organized criminal activity" more specifically defined.

The legislative history brings no greater insight as to what Congress intended to encompass within the phrase "organized crime" or "organized criminal activity." Representative Poff, speaking on October 7, 1970 in support of the Act, 116 Cong.Rec. 35293 (1970), characterized the concept of organized criminal activity as "broader in scope than the concept of organized crime; it is meant to include any criminal activity collectively undertaken since . . . there is an increased potential for intimidation of Government witnesses . . . . It is access to the collective criminal power that endangers the witness—whether of the Mafia, the Communist Party, the Black Panther Party or the KKK." He fostered Section 3503 on the ground that it would prove most "effective in stymieing the organized criminal element—Mafia, Black Panther, or KKK—who would think to threaten or injure Government witnesses." *Ibid.*

According to Congressman Railsback, the purpose behind giving the government the right to preserve the testimony of prospective witnesses was that the availability and admissibility of such evidence "may frustrate and remove the chief incentive that organized crime has in tampering with witnesses or their testimony." 116 Cong.Rec. 35304 (1970).

Senator McClellan, speaking on December 18, 1969, 115 Cong.Rec. 39907 (1969), makes the same point. The statutory provision "removes a major incentive from the forces of organized crime to kill or mutilate those who would testify against its operations."

■ These statements and the purposes defined in the statute indicated that Congress was seeking to give the government enlarged authority to deal with gangsterism, racketeering and the syndicated activity of clandestine criminal groups. The crimes generally associated with such groups are dealing in dangerous drugs, loan sharking, wholesale theft and fencing, terrorism, large-scale violence and murder. If Congress had purposed to give the government carte blanche authorization to utilize depositions in all multi-defendant criminal cases, it could have readily made that meaning clear. While the trial court has no authority to look behind the government's certification in a case where the crime is one associated with organized crime and constitutes *prima facie* involvement in organized criminal activity, as was the case in *Singleton,* the certification required must be more than a mere *pro forma* recitation of the litany set out in the statute.

The three defendants in this case are a member of Congress, his brother, a member of the New York Bar, and a Florida businessman. The charge is all too familiar—an effort by a public official to misuse governmental influence and power to secure money and commercial gain for himself and his associates in violation of the law. As narcotics peddling is a signature card for one associated with organized criminal activity, the crimes charged in this case are typical public official offenses. There is nothing in the Act to lead one to conclude that Congress envisioned the danger of organized crime or organized criminal activity infiltrating its ranks. The defendants are charged with heinous crimes—conspiracy to commit bribery, bribery, conflict of interest and perjury. Nonetheless, there is nothing to show that they have engaged in any of the activities or tactics which connote

**156**

organized crime or organized criminal activity.

█ The government seeks, with its unvarnished certification, to stretch its authority beyond the limited reach Section 3503 was intended to achieve. I find the certification is without basis in fact and is, therefore, made in bad faith. Therefore, the government's motion is denied.

Because removal of doubt concerning this question is of general significance and of critical importance to the parties in this case, I have requested and both sides have agreed to cooperate in seeking an early review and resolution by the Court of Appeals. Accordingly, the trial is adjourned until February 4th.

So ordered.