**Norman Lorenzo BRADEN,**
**Petitioner-Appellant,**

v.

**Walter T. CAPPS, Warden, and State of Alabama, Respondents-Appellees.**

**No. 74–3190.**

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1975.

William L. Howell, (Court-appointed), Mobile, Ala., for petitioner-appellant.

William J. Baxley, Atty. Gen., Sarah M. Greenham, Asst. Atty. Gen., Montgomery, Ala., Herbert H. Henry, Asst. Atty. Gen., Birmingham, Ala., Willis Holloway, Asst. Dist. Atty., Mobile, Ala., for respondents-appellees.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Braden, an Alabama state prisoner, was denied a writ of habeas corpus by the District Court. The primary ground of his petition was alleged denial of the Sixth Amendment right to speedy trial.

Braden was indicted at the same time on the case here involved (Burglary A) and two apparently related cases (Burglary B, and an assault with intent to murder charge which appears to have

occurred in connection with Burglary B). All occurred in the same neighborhood and on the same night.

The chronology of events in the three cases is long and convoluted, and it would serve no useful purpose to restate it in full. The District Court carefully weighed the factors outlined in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It found that the delay of three years between indictment and trial was sufficient to require serious consideration of Braden's claim, and that Braden had properly asserted the right to a speedy trial. Analyzing the various delays making up the three years, the habeas judge concluded that in two respects they were self-imposed by Braden. First, he found that continuance of all three cases by orders entered February 13, 1969, triggered a period of delay that was chargeable to Braden. The continuance involved a complex of events including the state's election to proceed first with trial of Burglary B, Braden's desire to try the assault case first, a one-day delay (from February 12 to February 13) granted in an effort to protect Braden's interest, and, on February 13, a motion by Braden to further continue Burglary B, and orders by the court to continue all three cases. Braden's witnesses were subpoenaed in the three cases and were present both February 12 and 13.

We are not able to say that the habeas judge—familiar with state trial practice from many years as a state trial judge—erred in concluding that the delay in the trial of this case, Burglary A, resulting

from the events of February 12–13, was caused by Braden.[1]

The second delay found to be self-imposed arose in October 1970. Burglary B had been tried, and, after numerous intervening events, the instant case was set for trial on October 15. The trial court had denied motions calling for dismissal of the indictments for failure to have a speedy trial, and Braden had filed in the Alabama Court of Criminal Appeals a petition for a writ of mandamus challenging the right of the state to try him at all and contending that the indictments must be dismissed for failure to grant a speedy trial. Braden wrote the clerk of the trial court on October 3 suggesting that the court might not wish to proceed with trial since mandamus had been denied by the Court of Criminal Appeals and certiorari had been granted by the Supreme Court of Alabama. Braden stated that it might take many months for that court to adjudicate the matter, therefore, he requested he be sent back to the state prison as soon as possible.[2] The trial court continued the case "pending the outcome of defendant's petition in the Supreme Court [of Alabama]."

The habeas court did not err in considering that this action was an appropriate response to Braden's letter and that the resulting time while the mandamus case made its way through the state courts was the responsibility of Braden. (After the Supreme Court of Alabama denied the petition to it for a writ of certiorari Braden sought certiorari from the Supreme Court of the United States.

---

1. Additional facts undergird what seems to us implicit in the habeas judge's opinion, that on February 12–13 Braden was not seeking trial on any case but seeking to avoid trial on all three cases. At arraignment Braden had sought additional time to secure counsel. Later he had been offered, and had refused, appointed counsel. On February 12–13 he appeared pro se. Some weeks after the February 13 continuances were entered he asked that counsel be appointed, which was done.

Also, on February 13 Braden filed in all three cases a request that the cases be sent back to an inferior court for another prelimi-

nary hearing, a petition for a writ of habeas corpus, and a motion requesting that he be furnished with pretrial records and law books. All were denied.

2. Actually the Court of Criminal Appeals had denied mandamus and denied a petition for rehearing, and a petition for a writ of certiorari had been filed in the Supreme Court of Alabama, but that court had not acted on it. Certiorari was denied November 19, 1970, approximately one month after the trial setting. Braden then applied to the United States Supreme Court for writ of certiorari, and that was denied April 5, 1971.

He unequivocally asked the trial court for a delay of trial while this petition was pending. The request was granted.)

Trial of Burglary A finally was held in June 1971, promptly after the United States Supreme Court denied certiorari. On direct appeal Braden raised the speedy trial issue. The Court of Criminal Appeals considered the question at length and held there had been no denial, pointing to the principle relating to self-imposed delay.

In analyzing the "reason for delay" factor discussed in *Barker v. Wingo,* the courts have often not permitted the accused to complain of self-caused delay.[3] The particular point before us is laid to rest by the decision of this circuit in *Torres v. Florida,* 477 F.2d 555 (CA5, 1973), holding that an accused may not complain of the delay in his trial caused by his seeking a mandatory writ in an effort to prevent his trial. For similar situations, see the following cases treating the particular type of delay described as chargeable to the accused: *United States v. Cook,* 463 F.2d 123 (CA5, 1972) (delay caused by appeals attacking conditions imposed on defendant's appearance bonds); *United States v. Albright,* 388 F.2d 719 (CA4, 1967) (trial adjournment to give mental examination to defendant, necessitated by his raising at trial and for the first time a defense of insanity at the time of the offense); *United States v. Singleton,* 460 F.2d 1148 (CA2, 1972) (delay caused by defendant's offer to cooperate with government with aim of getting charges dropped, defendant's help was unsatisfactory); *United States v. Key,* 458 F.2d 1189 (CA10), *cert. denied,* 408 U.S. 927, 92 S.Ct. 2510, 33 L.Ed.2d 339 (1972), and *United States v. Leal,* 460 F.2d 385 (CA9, 1972) (delay caused by defendant's effort to have case transferred to another jurisdiction); *United States v. Robinson,* 145 U.S.App. D.C. 46, 447 F.2d 1215 (1971) (postponement of trial caused by defendant's refusal to stipulate to the testimony of an ill prosecution witness although his counsel was willing to stipulate.)[4] Braden cannot have his cake and eat it too—i. e., seek to prevent the judicial machinery from moving to the trial stage, ask for time for that purpose, but reserve the right to complain later of the resulting delay.[5] To permit an accused to frustrate trial but later seek advantage from the delay he has triggered runs counter to the public interest in speedy trials which the courts have begun to recognize.

> The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.

*Barker v. Wingo, supra,* 407 U.S. at 519, 92 S.Ct. at 2186, 33 L.Ed.2d at 110–111. The opinion in *Barker* points to various consequences of trial delay that offend societal interests: backlogs of cases which enable defendants to more effectively negotiate for pleas of guilty to lesser offenses and otherwise manipulate

---

3. Although deeper analysis is required than that the accused in a causal sense triggered a procedure or event that consumed some period of time. See footnote 5, *infra.*

4. In Prince v. Alabama, 507 F.2d 693 (CA5, 1975), we implicitly accepted that the defendant would not be able to claim the benefit of delay in his extradition to the state seeking to try him if he had acted to frustrate extradition. We found, however, that he had not sought to frustrate extradition.

5. This is to be distinguished from what might be termed "neutral" passage of time, such as time required for hearing a nonfrivolous and timely-filed motion to suppress, or timely and reasonable avail to discovery procedures. Compare United States v. Drummond, 488 F.2d 972 (CA5, 1974), holding the defendant chargeable for time caused by dilatoriness in discovery.

the system; commission of other crimes, and the temptation of jumping bail, when the defendant is free for an extended period awaiting trial; overcrowding of prisons; the dollar cost of maintaining prisoners in detention; the burden on society of supporting the families of incarcerated breadwinners. 407 U.S. at 519–520, 92 S.Ct. at 2186–2187, 33 L.Ed.2d at 110–111.

It can also be said that an accused released pending trial often has little or no interest in being tried quickly; but this, standing alone, does not alter the prosecutor's obligation to see to it that the case is brought on for trial. The desires or convenience of individuals cannot be controlling. The public interest in a broad sense, as well as the constitutional guarantee, command prompt disposition of criminal charges. *Strunk v. United States,* 412 U.S. 434, 439 n. 2, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56, 61 n. 2 (1973).

We agree with the court's findings concerning lack of prejudice. Braden claims that he lost the opportunity to produce an alleged alibi witness whose identity is unverified and whose present whereabouts are unknown. The first two times the present case was set, February 12, 1969, and an earlier setting, the alleged witness was not included in the list of witnesses that Braden requested be subpoenaed.

When the findings that we have discussed are considered under the balancing process required by *Barker v. Wingo,* the decision of the District Court was not erroneous.

The judgment denying the writ is affirmed.